# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM LANZI and SUZAN LANZI,

Plaintiffs-Appellees,

v

TOWNSHIP OF ST. CLAIR,

Defendant-Appellant.

UNPUBLISHED
May 23, 2017

No. 329795
St. Clair Circuit Court
LC No. 14-002571-CZ

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right an order granting in part and denying in part its motion for summary disposition, brought pursuant to MCR 2.116(C)(7) and (C)(8). We reverse.

## I. STATEMENT OF FACTS

Defendant's sewage system is monitored and controlled by a supervisory control and data acquisition, or SCADA, system, which provides real time recorded data from sewage lift stations to the sewage master station. The SCADA system also allows for circuit breakers, switches, valves, and pumps to be operated remotely from the master station. The SCADA system will send an alert from the lift station to the master station in the event of a system failure.

At approximately 11:45 p.m. on October 26, 2013, plaintiffs discovered "grey water" coming up through the floor drains and shower drain in their finished basement. Plaintiffs attempted to contact defendant through defendant's website, but no emergency phone number was listed. Plaintiffs' neighbors ultimately called the Mayor of the city of St. Clair, who in turn, contacted Don Chopp, "a contract service provider to the St. Clair Township Sewer Department." Chopp arrived at plaintiffs' residence to assess the situation in the early morning hours of October 27, 2013. Chopp went to "the nearby sanitary sewer pump station" located 1/4 mile north of plaintiffs' residence, where he manually turned the sewage pumps back on. Once Chopp manually activated the sewage pumps, the sewage in plaintiffs' basement receded. Chopp indicated that "the sanitary sewer system electric circuit board had failed[,]" and that had caused the sewage backup.

-1-

## II. SEWAGE SYSTEM EVENT EXCEPTION TO GOVERNMENTAL IMMUNITY

Plaintiffs claimed that defendant was liable for the sewage backup pursuant to the sewage system event exception to governmental immunity found in MCL 691.1417, for negligence, and because their action constituted an unconstitutional taking of their property. Defendant moved for summary disposition, arguing that plaintiffs claim of negligence does not overcome the immunity afforded to defendants. Defendant further argued that plaintiffs had not plead or established that governmental immunity should be avoided under the sewage disposal system event exception. Specifically, defendant stated that plaintiffs had not established that defendant knew, or through the exercise of due diligence should have known, of the defect in the sewage system which caused the sewage backup into plaintiffs' home, as is required by MCL 691.1417(3)(c), or that it failed to reasonably correct the defect within a reasonable time after being made aware of the situation, as is required by MCL 691.1417(3)(d). The trial court granted defendant's motion with respect to plaintiff's claim of negligence, but denied its motion concerning plaintiffs' statutory claim for a sewer disposal system event, finding that questions of fact existed on certain elements of this claim. The trial court also allowed plaintiffs' constitutional taking claim to survive as an alternate basis for relief. Defendant appeals that portion of the trial court's order denying summary disposition in its favor.

### A. STANDARD OF REVIEW

A trial court's grant or denial or a motion for summary disposition is reviewed de novo. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). Summary disposition will be awarded pursuant to MCR 2.116(C)(7) when a claim is barred because of immunity granted by law. A plaintiff must "allege facts warranting the application of an exception to governmental immunity" in order to survive a motion for summary disposition pursuant to MCR 2.116(C)(7). *Plunkett v Department of Transportation*, 286 Mich App 168, 180; 779 NW2d 263 (2009) (footnote omitted). In reviewing a motion brought pursuant to MCR 2.116(C)(7), "[t]he plaintiff's well-pleaded factual allegations must be accepted as true and construed in the plaintiff's favor, unless the movant contradicts such evidence with documentation." *Id*. (footnote omitted). Where reasonable minds cannot differ on the legal effect of the facts, it is a question of law as to whether plaintiff's claims are barred by governmental immunity. *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011). The applicability of governmental immunity and the statutory exceptions are reviewed de novo. *Moraccini v City of Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012).

### B. ANALYSIS

The Michigan governmental immunity act, MCL 691.1401 *et seq*, provides broad protection from tort liability for governmental agencies engaged in a government function. *Nawrocki v Macomb Co Rd Com'n*, 463 Mich 143, 156; 615 NW2d 702 (2000). There are some statutory exceptions to governmental immunity. *Cannon Township v Rockford Public Schools*, 311 Mich App 403, 415; 875 NW2d 242 (2015). However, those exceptions are to be narrowly construed. *Id*. One such exception is the sewage disposal system event exception, found in MCL 691.1417. MCL 691.1417(2) states, in pertinent part:

[a] governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency.

MCL 691.1417(3) goes on to state:

[i]f a claimant, including a claimant seeking noneconomic damages, believes that an event caused property damage or physical injury, the claimant may seek compensation for the property damage or physical injury from a governmental agency if the claimant shows that all of the following existed at the time of the event:

(a) The governmental agency was an appropriate governmental agency.

(b) The sewage disposal system had a defect.

(c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

(d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

(e) The defect was a substantial proximate cause of the event and the property damage or physical injury.

Plaintiff must satisfy all factors enumerated in MCL 691.1417(3). *Willett v Charter Twp of Waterford*, 271 Mich App 38, 49, 52; 718 NW2d 386 (2006). Further, a plaintiff must provide reasonable proof of ownership of any damaged personal property, as well as compliance with the notice requirements found in MCL 691.1419. MCL 691.1417(4); *Willett*, 271 Mich App at 50.

Defendant argues that it did not know, nor could it have known about the electrical failure of the motherboard. In support of its position, defendant presented an affidavit and expert report from Michael S. McGuire, defendant's expert and a licensed engineer who investigated the SCADA system's faulty motherboard, to show that, due to an electrical failure, defendant did not know, or could not have known through the exercise of due diligence, of the defect because the alarm code that would have alerted defendant to the defect could not be sent back to the master station.[1] In his affidavit, McGuire also swore that motherboards of SCADA systems have a very low failure rate and are not a piece of equipment normally expected to fail.

---

[1] At argument, plaintiffs suggested that there was a sudden and total cessation of real time transmissions from the station and that this constitutes notice that the motherboard has failed. However, plaintiffs do not refer us to any testimony or other evidence that there was a sudden and total cessation of real time transmissions and we do not find any such evidence in our own

In response, plaintiffs argue that defendant should have known that if the motherboard failed, which it may, some backup system had to be in place to activate the pumps or give notice to the sewer system operators that the pumps were not working. However, plaintiffs' assertion that a piece of equipment *could theoretically* fail and that a backup system *should* be in place, without more, does not meet its burden. Once defendant supported its position with evidence, the burden shifted to plaintiffs to dispute this evidence, and show that a question of fact existed. MCR 7.212(C)(7); *Plunkett*, 286 Mich App at 180. Plaintiffs conducted no discovery. Plaintiffs could have subpoenaed Chopp during the discovery period, but did not. Plaintiffs also did not depose McGuire, and presented no evidence to contradict or dispute McGuire's affidavit or report. Plaintiffs did not provide evidence that any, let alone a particular back up system would have prevented the event. Thus, plaintiffs did not satisfy their burden of demonstrating that a material question of fact existed, such that summary disposition in favor of defendant was appropriate. *Plunkett*, 286 Mich App at 180.

Defendant cites to *Willett* in support of its position, where this Court found summary disposition in favor of the defendant to be appropriate where the plaintiff alleged that the defendant knew, or should have known, of the presence of a "large concrete or asphalt object" in the defendant's sewer line, which caused a backup in the sewer system. *Willett*, 271 Mich App at 51-52. This Court determined that "[the plaintiff] merely alleged that [the] defendant 'knew, or the in exercise of reasonable diligence should have known, about the defect,' but failed to present any evidence to support" the plaintiff's allegation. *Id*. at 52. Thus, the plaintiff could not establish that the defendant was not entitled to governmental immunity pursuant to MCL 691.1417. *Id*. at 55. Similarly here, where plaintiffs present no evidence to support their argument, defendant was entitled to summary disposition.

Conversely, in *Cannon Township*, 311 Mich App 403, this Court determined that the defendant was not entitled to summary disposition because, pursuant to MCL 691.1417(3)(c), the plaintiff had demonstrated that the defendant knew of the defect. The plaintiff presented evidence that

> an almost identical sewage event occurred in September 2010, a year before the event [underlying this] lawsuit. Although [the defendant] denied that its officials had any knowledge of this previous event, there is evidence to indicate otherwise. Specifically, Gary Seger, a Kent County DPW employee, testified in his deposition that he spoke to Gerry VanCamp, the school's head custodian, in September 2010 following a power outage that resulted in an excessive flow of water being discharged from the middle school into the Davies lift station. During this meeting, which took place at the school, VanCamp accompanied Seger to the boiler room, showed him the water filtration system, explained the problem with the valve system, and indicated that he had manually

---

review of the record. Defendant's expert testified that the motherboard failure prevented alarm codes from being sent to the main station as notification of an error. There is no further explanation by anyone as to what this means, just like there was no evidence describing how the system was monitored on the weekends. We cannot hold that there is a question of material fact based on an argument for which there is no evidence.

-4-

closed the valves. According to Seger, VanCamp further noted that "they had already talked about [the problem] and were going to do something about it." Seger understood VanCamp to mean that he had spoken to "school officials" about the issue. During his own deposition, VanCamp acknowledged that he was notified about the problem with [the defendant's] water filtration system in September 2010, that he had manually turned the valves off, and that he subsequently notified someone from the maintenance department of his actions. [*Cannon Twp*, 311 Mich App at 418-419.]

Plaintiffs present no such evidence. There was no indication that defendant knew of the faulty motherboard or could have predicted its failure, particularly given McGuire's sworn, uncontested statement that "[m]otherboards, to include the motherboards of SCADA systems, have a very low failure rate and are not a piece of equipment normally expected to fail." Furthermore, the motherboard in this case was only three years old. Additionally, none of defendant's representatives indicated that they were previously aware of an issue with the lift station's motherboard, or that any similar event had occurred in the past. The evidence, or lack thereof, presented by plaintiffs pales in comparison to the evidence presented by the plaintiffs in *Cannon Township*. Accordingly, defendant was entitled to summary disposition.

Plaintiffs also argue in their brief on appeal that if the pump station "had its set points for the activation of the pump set in proper sequence, the incident would not have occurred." However, in McGuire's second affidavit, McGuire stated that even if the set points had been properly set, the faulty side switch still would have resulted in the electrical failure that caused the sewage backup. Further, McGuire swore in his first affidavit that even if defendant had utilized an electric surge protector within the system, the failure of the motherboard, caused by the electrical failure due to the faulty side switch, still would have occurred. Plaintiffs offered no evidence to rebut McGuire's opinion. Thus, plaintiffs have not demonstrated that defendant knew, or should have known, of the defect until plaintiffs reported the sewage backup. Thus, because plaintiffs cannot meet the requirement of MCL 691.1417(3)(c), defendant was entitled to summary disposition.

Defendant also argues that plaintiffs did not demonstrate that it failed to "take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect"—another requirement plaintiffs needed to establish in order to avoid governmental immunity under MCL 691.1417(3)(d). The facts are uncontested that as soon as defendant became aware of the sewage backup, Chopp came to plaintiffs' residence to investigate. Once the problem was identified, Chopp manually restarted the lift station and the sewage receded. Defendant stated in its brief in support of its motion for summary disposition that a replacement motherboard was installed the same day, as soon as it was made aware of the sewage backup and the problem was identified. Although plaintiffs sustained significant property damage, the entire incident lasted only a few hours. Thus, it cannot be said that defendant failed to take reasonable steps in a reasonable amount of time to remedy the defect. See *Willett*, 271 Mich App at 53, where evidence was presented "that within minutes after receiving notice of the problem, defendant dispatched its crew to the area, and the crew" was able to dislodge the foreign obstruction within a span of 2½ hours.

In order to demonstrate that defendant was not entitled to the government immunity provided by MCL 691.1401 *et seq.*, plaintiffs were required to satisfy all the factors enumerated in MCL 691.1417(3). *Willett*, 271 Mich App at 52. However, as discussed above, plaintiffs have not met this burden. Thus, summary disposition in favor of defendant regarding plaintiffs' claim under MCL 691.1417 was appropriate. We therefore reverse the trial court's order finding otherwise.

## III. UNCONSTITUTIONAL TAKINGS CLAIM

Defendant also argues in its brief that plaintiffs' takings claim should have been dismissed because it is not a claim upon which relief can be granted. MCR 2.116(C)(8). Specifically, defendant argues that it was in error for the trial judge to allow plaintiffs' takings claim to stand, even though it was plead in the alternative, because, pursuant to *Jones v Powell*, 462 Mich 329; 612 NW2d 42 (2000), a claim against a municipality, seeking monetary damages for an unconstitutional taking, is barred. This issue was not raised in defendant's statement of the questions presented on appeal, and thus, it is not properly before this Court. MCR 7.212(C)(5); *People v Unger*, 278 Mich App 210, 262; 749 NW2d 272 (2008). However, in the interest of efficiency, and because defendant was entitled to summary disposition, we nonetheless address this claim.

## A. STANDARD OF REVIEW

A trial court's grant or denial or a motion for summary disposition is reviewed de novo. *Beaudrie*, 465 Mich at 129. A defendant may move for summary disposition under MCR 2.116(C)(8) when the plaintiff has failed to state a claim on which relief can be granted. *Thomas M Cooley Law School v Doe 1*, 300 Mich App 245, 261; 833 NW2d 331 (2013). "The trial court must accept the factual allegations in the complaint as true, and construe them in the light most favorable to the nonmoving party." *Id*. at 261-262. Summary disposition pursuant to MCR 2.116(C)(8) is appropriate where a plaintiff's claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify the opposing party's right to recovery." *Id*. at 262.

## B. ANALYSIS

Plaintiffs allege that the "physical invasion" of sewage onto their property resulted in an interference with their exclusive right to utilize their property in the manner that they saw fit, without just compensation for the interference or taking of their property, in violation of the Michigan Constitution. Const 1963, art 10, § 2. However, in *Jones*, our Supreme Court determined that no damage remedy exists for claims against a municipality, or government employee, for a violation of the Michigan Constitution when an alternative remedy exists. *Jones*, 462 Mich at 335. Not only is taking of a plaintiffs' property without just compensation a violation of the Michigan Constitution, it is also a violation of the United States Constitution, specifically the takings clause, found in Article V. US Const, art V. Accordingly, because plaintiffs have an alternative avenue for relief, namely a claim under 42 USC 1983, they cannot sustain a claim for monetary damages against defendant, a municipality, for a violation of the Michigan Constitution. *Jones*, 462 Mich 329. Thus, pursuant to MCR 2.116(C)(8), the trial

court should have granted defendant's motion for summary disposition as it related to plaintiffs' takings claim.  Accordingly, we reverse the trial court on the takings claim.

Reversed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro